UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **SHANELL LYNN THOMPSON** | **CIVIL ACTION NO. 22-6061** |
| **VS.** | **SECTION P** |
| | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA TRANSITIONAL CENTER FOR WOMEN, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Shanell Lynn Thompson, a prisoner at Louisiana Transitional Center for Women proceeding pro se and in forma pauperis, filed this proceeding on approximately November 22, 2022, under 42 U.S.C. § 1983. She names the following defendants: Louisiana Transitional Center for Women, Warden Chris Stinson, and Major John Murray.[1]

For reasons that follow, the Court should retain Plaintiff's claims of lack of medical care against Warden Chris Stinson and Major John Murray. The Court should dismiss Plaintiff's remaining claims.

### Background

Plaintiff states: "I'm currently fighting my case being that I was sentenced to 30 years. [sic]." [doc. # 1, p. 3]. She claims that she does not have access to the law library at her facility and that there are no inmate counselors. *Id.* She attaches an exhibit which states, "Law Library is unavailable until further notice per Major Murray." [doc. # 1-2, p. 1]. In an amended pleading, she alleges:

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

> Not having access to do research, unable to compare case laws, and no knowledge about recent or new laws deprive me of the right to do so. Also, the lack of resources and outdated law books (which go back to 2017) along with no access to computer affects the ability to type motions or any legal document. As of February 2023 a law librarian was appointed to help but it's useless due to the outdated information. Post-convictions, motion, and appeals have time limitations and could harm the benefit of my case going back to court. [sic].

[doc. # 14, p. 1].

Plaintiff next claims that she is not receiving needed medical attention "or mental health assistance." [doc. # 1, p. 3]. She has anxiety, depression, bipolar manic disorder, and post-traumatic stress disorder ("PTSD"). [doc. # 14, pp. 1-2]. She has suffered "racing thoughts, restless[ness], chest pains, weight loss[,]" and "tingling on the left side of" her body. *Id.* She attempted to obtain "mental health assistance[,]" but a nurse told her that "the assistance isn't available at this facility." *Id.* at 2. The lack of "psychiatric or therapeutic treatment" causes her "to be unstable and mentally disturbed." *Id.* She requested blood work, and she was placed on a doctor's list, but the doctor has not seen her. *Id.*

Plaintiff reported her "medical issues" and "circumstances to Major John Murray multiple times[.]" [doc. # 1, p. 3]. Murray "said he would address the problem but never did." *Id.* She approached Murray after she noticed that "nothing was being done[,]" but she was ignored. *Id.* She also requested medical care multiple times from Warden Stinson for her "condition and concerns," but she did not receive a response. [doc. # 14, p. 2].

Next, Plaintiff claims that offenders lack recreation. [doc. # 1, p. 3]. She only receives recreation "2 to 3 times a month." [doc. # 14, p. 3]. "There are no exercise activities/equipment or sport activities such as basketball or volleyball." *Id.*

Plaintiff also claims that there are no "programs or activities to help rehabilitate offenders" who "are sentenced to a lot of time." [doc. # 1, p. 3]. "The jobs and programs are limited to offenders with 5 years or less." [doc. # 14, p. 3].

Plaintiff seeks a proper "medical/mental health" evaluation, access to the law library to "gain the knowledge [she] needs[,]" adequate recreation, and a transfer to another facility. [doc. #s 1, p. 4; 14, p. 3].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, her complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because she is proceeding in forma pauperis, her Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Here, Plaintiff states plausible claims against Major John Murray and Warden Chris

5

Stinson. First, she alleges that she has serious medical needs: she suffers "tremendously" from anxiety, depression, bipolar manic disorder, and PTSD. [doc. # 14, pp. 1-2]. She experiences racing thoughts, restlessness, anxiety, chest pains, weight loss, and "tingling on the left side of her body." *Id.* at 2. She is "unstable and mentally disturbed."

Second, she alleges that she requested medical care from Major Murray and Warden Stinson "multiple times[,]" yet she has not received any response or medical treatment. Her pleading is admittedly not a model of clarity. For instance, she does not specify exactly what she told or requested from Murray and Stinson. That said, construing her allegations liberally and in her favor at this early stage of the proceeding, she plausibly alleges that Murray and Stinson knew of, yet disregarded, a substantial risk of serious harm: following her description of all her conditions and associated symptoms, as well as her statement that she has "been reaching out to get the mental assistance [she] need[s]," she alleges that she informed Murray and Warden of her "condition and concerns via request forms" on multiple occasions. [doc. # 14, p. 2]. In addition, while she has seen a nurse, she suggests that she did not receive any treatment from the nurse because "mental health assistance" is unavailable at the facility. *Id.*

The Court should retain these claims.

**3. Access to Court**

As above, Plaintiff states: "I'm currently fighting my case being that I was sentenced to 30 years. [sic]." [doc. # 1, p. 3]. In her initial pleading, she claims that she does not have access to the law library at her facility and that there are no inmate counselors at the facility. *Id.* She attaches an exhibit which states, "Law Library is unavailable until further notice per Major Murray." [doc. # 1-2, p. 1]. In an amended pleading, she alleges:

> Not having access to do research, unable to compare case laws, and no knowledge about recent or new laws deprive me of the right to do so. Also, the

6

> lack of resources and outdated law books (which go back to 2017) along with no access to computer affects the ability to type motions or any legal document. As of February 2023 a law librarian was appointed to help but it's useless due to the outdated information. Post-convictions, motion, and appeals have time limitations and could harm the benefit of my case going back to court. [sic].

[doc. # 14, p. 1]. Plaintiff seeks access to the law library to "gain the knowledge [she] needs[.]" [doc. # 1, p. 4].

To succeed on a claimed denial of access to courts, a plaintiff must show that she lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a claim of denial of access to the courts, a plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Christopher v. Harbury*, 536 U.S. 403, 417-18 (2002).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented her from filing or caused her to lose a pending case that attacks either her conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

"Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an

7

opportunity to seek some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (*quoting Christopher*, 536 U.S. at 413-14).

"To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012); *see Christopher*, 536 U.S. at 413-14 (("These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.").

With respect to the inability to access a library or a claim that a library was deficient, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The "inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim." *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017).

Here, Plaintiff does not present a 'backward-looking claim.' She does not, in other words, allege that the inadequate or inaccessible law library caused her to lose any claim, post-

8

conviction application, appeal, or other.  She does not look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable."  *See Christopher*, 536 U.S. at 413-14.  Under Plaintiff's allegations she can still (potentially) obtain the relief she seeks.  She has not identified "a remedy that is not otherwise available in another suit . . . ."  *See Waller* 922 F.3d at 602 (finding that the plaintiffs did not identify a remedy that is not otherwise available in another suit that may yet be brought because the plaintiffs were actively litigating their underlying claim, because it was "too early to say" that the plaintiffs' underlying claim was compromised, and because the plaintiffs had yet to suffer a "concrete setback traceable to the defendants'" actions).[3]

Instead, Plaintiff presents a 'forward-looking claim,' seeking "access to the law library according to the law" to "gain the knowledge [she] needs" to prepare and file a proceeding challenging her conviction.  [doc. #s 1, p. 4; 14, p. 1].  Plaintiff, however, does not state a claim on which relief may be granted.

First, Plaintiff does not allege that the outdated resources or other deficiencies in the library prevent her from preparing, transmitting, or filing any proceeding or appeal.  She states that lacking a computer affects her ability "to type motions or any legal document[,]" but she does not allege that she is unable to prepare and file any proceeding because of her inability to type a document.  In other words, she does not allege that she lacks the means to draft a document by hand.

---

[3] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Plaintiff tacitly suggests that she is unable to prepare an adequate post-conviction application, but she does not specify what she needs from the law library or inmate counsel to prepare her application. Rather, she vaguely alleges that she needs "research[,]" access to "recent or new laws[,]" and "resources." To reiterate, "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Plaintiff does not allege how improved access to the law library or access to a better library would aid her, what specific cases or law she will cite if she has access to what she wants, or how her claims will be meritorious. *See Hopkins v. Ogg*, 2019 WL 3761360, at *3 (5th Cir. Aug. 8, 2019).

To the extent Plaintiff claims that her lack of access to the library (or to a better library) affected her ability to research, "there is no constitutional right to 'be able to conduct generalized research.'" *Douthit v. Dean*, 568 F. App'x 336, 337 (5th Cir. 2014) (*quoting Lewis,* 518 U.S. at 351) (reasoning that the plaintiff's "motion alleged that the library's deficiencies would cause immediate harm to his case, [but] he did not specify how the case would be harmed. For example, he did not allege that he was unable to draft an adequate complaint or other pleading without the missing volumes."). There is no "abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351.

Further, Plaintiff does not identify a nonfrivolous, arguable claim she wishes to present in another proceeding. She does not "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued . . . ." *Christopher*, 536 U.S. at 417-18; *see Sanchez*, 689 F. App'x at 799 ("His assertions that he has been hindered in presenting claims challenging his criminal conviction and prison disciplinary cases are conclusory. He fails to describe the claims with the particularity needed to evaluate whether they

10

were nonfrivolous and does not explain with specificity how the absence of legal materials and assistance in Spanish actually hindered those claims.").

Plaintiff does not identify a claim, defense, or proceeding that she cannot presently prepare or file, that she could not prepare or file in the past, that she lost, or for which she could not obtain a remedy. The Court should dismiss Plaintiff's access-to-court claims.

### 4. Conditions of Confinement

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (*quoting Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[4] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in

---

[4] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[5] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

A. Rehabilitation Programs and Activities

Plaintiff claims that there are no "programs or activities to help rehabilitate offenders" who "are sentenced to a lot of time." [doc. # 1, p. 3]. "The jobs and programs are limited to offenders with 5 years or less." [doc. # 14, p. 3].

Plaintiff, however, has no constitutional right to participate in programs she describes.[6] Moreover, "the lack of a rehabilitative program does not by itself constitute cruel and unusual punishment . . . ."). *Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986). Plaintiff ultimately does not explain how the absence of these programs deprived her of any life necessity.

---

[5] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

[6] *See McBride v. Powers*, 364 F. App'x 867, 870-71 (5th Cir. 2010) (holding that the plaintiff "failed to state a claim for violation of his equal protection or due process rights, as inmates have no constitutional right to participate in rehabilitative or educational programs while incarcerated."); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) ("[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners."); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time credits).

B. Recreation

Plaintiff claims that she only receives recreation "2 to 3 times a month." [doc. # 14, p. 3]. She adds, "There are no exercise activities/equipment or sport activities such as basketball or volleyball." *Id.*

While some level of exercise and recreation is certainly an identifiable life need,[7] Plaintiff does not describe an extreme deprivation of any identifiable life need. She does not allege, for instance, that she is unable to exercise.[8] She does allege that she lacks some recreation; however, she does not describe (i) an *extreme* deprivation of any life need or (ii) a substantial risk of serious harm because of the "irregular" recreation she receives. [doc. # 14, p. 3]. She alleges that she lacks equipment, basketball, and volleyball, but these are not 'minimal civilized measures of life's necessities.'

Finally, Plaintiff states that the Department of Corrections "entitles" offenders to at least one hour of recreation. [doc. # 14, p. 3]. However, "[T]he failure of prison administrators to follow prison rules and regulations does not, without more, give rise to a constitutional violation." *Moreno v. Bunton*, 193 F.3d 518 (5th Cir. 1999); *see Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("The [LDPSC] and [Corrections Corporation of

---

[7] *See Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982) (favorably citing other courts' opinions that "inmates need regular exercise to maintain reasonably good physical and psychological health.").

[8] *See Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (finding a similar claim "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); *Carter v. Hubert*, 452 F. App'x 477, 478-79 (5th Cir. 2011) ("In regard to his unconstitutional conditions of confinement claims that his placement in a restrictive cell program for seven days at a time, for a total of 26 days, resulted in a lack of exercise, deprivation of meals, and flu-like symptoms due to a severely cold cell, Carter has not demonstrated that prison officials violated his Eighth Amendment rights."); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), on reh'g, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise.").

America] internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal footnotes removed).

The Court should dismiss these conditions-of-confinement claims.

**5. Transfer**

Plaintiff asks the Court to order her transfer to another facility. [doc. # 1, p. 4]. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." La. Rev. Stat. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of her choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss her request for a transfer.

14

**6. Entity Unamenable to Suit**

Plaintiff names Louisiana Transitional Center for Women as a defendant.

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

The entity above does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against this entity.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Shanell Lynn Thompson's conditions-of-confinement claims, access-to-court claims, claims against the Louisiana Transitional Center for Women, and request for a transfer be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

15

***Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

    In Chambers, Monroe, Louisiana, this 6th day of June, 2023.

                                                                  _____
Kayla Dye McClusky
United States Magistrate Judge